No. 5080.

JOHN A. EASTIN *v.* SUCCESSION OF WILLIAM H. OSBORN.

The plea of *res judicata* is not tenable, when the decree referred to in support of the plea declares that a judgment of nonsuit is rendered.

*Prima facie*, every acceptance affords a presumption of funds of the drawer in the hands of the acceptor, and the evidence in this case supporting the legal presumption resulting from the acceptance of the draft, that the drawers, either had funds in the hands of the acceptors, or, at any rate, had reasonable grounds to expect that their draft would be honored, said drawers were entitled to notice of dishonor, and on failure thereof were discharged from liability.

APPEAL from the Ninth Judicial District Court, parish of Rapides. R. J. *Bowman*, Judge *ad hoc*, in the place of the district judge recused. *T. C. Manning*, for plaintiff and appellee. *R. P. Hunter*, for defendant and appellant.

LUDELING, C. J. This suit is brought on a draft drawn by J. & W. H. Osborn on Rhorer & Zunts, and accepted by them, dated third of April, 1861, and payable to the order of E. F. Duncan, on the fifth of February, 1862.

John Osborn having taken the benefit of the bankrupt act, the succession of his brother, who had been his partner in planting, is sued for one-half the amount of the said draft.

The defenses set up are, *res judicata, prescription*, and a discharge from liability on account of the failure of the holder of the draft to protest the same, or to give the drawers notice of the dishonor of the draft. The plea of *res judicata* is not tenable. The decree referred to, to sustain the plea, in terms declares that a judgment of nonsuit is rendered.

On its face, the draft sued upon is prescribed; but it is urged that prescription was interrupted by the suit in which the before mentioned judgment was rendered. This on the other hand is denied, because it is alleged that there was no citation to W. H. Osborn. There was an acceptance of service of citation and petition by John Osborn, and subsequently an answer was filed for all the defendants. The code declares that the course of prescription is interrupted by a citation. Whether an acceptance of service of petition and citation, without any citation in fact, would meet the requirements of the law is unnecessary to decide, as we have concluded to decide the case on the merits.

The draft was drawn by planters on their factors, who accepted the same.

*Prima facie*, every acceptance affords a presumption of funds of the drawer in the hands of the acceptor. 1 Pars. Bill and Notes p. 323.

In this case the testimony is somewhat conflicting as to whether J. & W. H. Osborn had funds in the hands of the drawees. Marcus J. Zunts states that "as a firm" they had not. While J. Osborn swears

that they had.   But the witness Zunts, in answer to the question, "had John & W. H. Osborn, or either of them, any reason to suppose or believe, or expect that your firm would pay this draft," etc., answered "Yes, as acceptor of the draft and to protect the credit of the house, they had every reason to believe that we would raise the money to pay the draft to save our credit as merchants.   They speculated on this common rule among commission merchants and held back their produce," etc.   He further testifies that prior to the formation of the planting partnership, both partners individually did business with J. M. Rhorer & Co., of which he, Zunts, was a member, and that each of them had "an account upon the books of the firm of Rhorer & Co. for the purpose of making remittances of drafts for collection, and drawing against such collections to suit their convenience."   The drawees and acceptors appear to be the successors of J. M. Rhorer & Co., and J. & W. H. Osborn as a firm, continued their business with them.   But John Osborn swears that they had funds in the hands of the drawees, and that they had reasonable grounds to expect their draft to be honored.   He further swears that the reason the sugar crop was not shipped, was because Rhorer & Zunts, the drawees, advised them not to ship it, and afterwards the city fell into the hands of the federal army.

We think the evidence supports the legal presumption resulting from the acceptance of the draft by the drawees, that the drawers had funds in the hands of the acceptors; at any rate, it establishes that the drawers had reasonable grounds to expect that their draft would be honored, and they were entitled to notice of dishonor.

It is therefore ordered and adjudged, that the judgment of the lower court be annulled, and that there be judgment rejecting the plaintiff's demand with costs of both courts.